UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GREGORY A. LAMASTER;<br>PAMELA J. LAMASTER;<br>A.G.A.L., a minor, by his next friends and parents, Gregory A. Lamaster and Pamela J. Lamaster; and<br>E.M.L., a minor, by her next friends and parents, Gregory A. Lamaster and Pamela J. Lamaster,<br><br>                Plaintiffs,<br><br>          v.<br><br>THE INDIANA DEPARTMENT OF CHILD SERVICES;<br>TERRY J. STIGDON, in her official capacity as Director of the Indiana Department of Child Services;<br>JOAN KELLY, in her individual capacity as a county director of the Indiana Department of Child Services;<br>ALLISON BERRY, in her individual capacity as a caseworker supervisor of the Indiana Department of Child Services; and<br>CLAUDIA STRANGE, in her individual capacity as a caseworker of the Indiana Department of Child Services,<br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:18-cv-00029-RLY-DML |

**ENTRY ON THE DEFENDANTS' MOTION TO DISMISS**

This is an action filed by Plaintiffs, Gregory Lamaster and his wife Pamela Lamaster (collectively the "Lamasters"), both individually and on behalf of their two minor children, A.G.A.L. and E.M.L. (collectively "Plaintiffs"), against the Defendants,

1

the Indiana Department of Child Services ("IDCS"); Terry Stigdon, in her official capacity as Director of IDCS; and Joan Kelly, in her individual capacity as the IDCS Scott County Director; Allison Berry, in her individual capacity as an IDCS Scott County Caseworker Supervisor; and Claudia Strange, in her individual capacity as an IDCS Scott County Caseworker. Plaintiffs allege Kelly, Berry, and Strange (collectively "County Defendants") placed a six-year-old child, R.D.S., and his teenaged siblings (collectively the "Stacy children") with the Lamasters and their children, ages six (A.G.A.L.) and two (E.M.L.). During the time the Stacy children were under the Lamasters' care, the Lamasters allege R.D.S. sexually abused their children. Plaintiffs allege the County Defendants knew R.D.S. had been sexually abused but did not disclose that information to the Lamasters prior to placement. Plaintiffs also allege they were never paid foster care maintenance payments for any of the 173 days the children were placed in their home. Plaintiffs now bring claims for violation of their Fourteenth Amendment substantive due process rights for failing to protect the Lamaster children from R.D.S.'s sexual abuse and for failing to disclose R.D.S.'s sexual abuse history. The also bring a claim for foster care maintenance payments, a declaratory judgment claim against Stigdon, and various state law claims.

Defendants now move to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The court, having read and reviewed the parties' submissions and the applicable law, now finds the motion should be **GRANTED in part** and **DENIED in part**.

**I.     Dismissal Standard**

Pursuant to Rule 12(b)(6), a complaint may be dismissed if the plaintiff fails to state a claim upon which relief may be granted. To survive a motion to dismiss, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* (quoting *Bell Atlantic*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**II.     Discussion**

The court will begin its discussion with Plaintiffs' substantive due process claims set forth in Counts I (failure to protect) and II (failure to disclose).

**A.     Due Process Claims**

In Count I of their Complaint, Plaintiffs allege the County Defendants (Kelly, Berry, and Strange) knew R.D.S. was a sexual abuse victim and that victims like him are more likely than non-victims to sexually assault other children, like A.G.A.L. and E.M.L., if safeguards are not put in place. (Filing No. 1, Compl. ¶ 34). Nevertheless, they failed to disclose R.D.S.'s past sexual abuse to the Lamasters. (*Id.* 35). Plaintiffs

allege the County Defendants' failure to protect the Lamasters and their children from the danger they created in placing R.D.S. with the Lamasters proximately caused their injuries. (*Id.* ¶ 36). In Count II, Plaintiffs allege the County Defendants' failure to disclose R.D.S.'s sexual abuse history proximately caused their injuries. (*Id.* ¶ 39). Their claims are brought pursuant to Section 1983. To state a claim for relief under Section 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or the laws of the United States which (2) was caused by a person acting under color of state law. *D.S. v. East Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015).

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving a "person of life, liberty, or property." U.S. Const. amend. XIV. The Clause places a limitation on the state's power to act; however, it does not act "as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). In other words, its purpose is "to protect people from the State, not to ensure that the State protect[s] them from each other." *Id*. at 196. Thus, in *DeShaney*, the Supreme Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

Two exceptions have arisen out of *DeShaney*'s general rule. First, the state is duty-bound to protect individuals with whom it has a "special relationship," such as a custodial relationship that cuts off alternative avenues of aid. *D.S.*, 799 F.3d at 798 (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). Second, the "state created

danger" exception applies when "the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (internal quotation marks and citations omitted).

Here, Plaintiffs proceed under the "state-created danger" exception. Plaintiffs state a claim under the state-created danger exception "if they allege state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993). This exception consists of three elements: (1) the state, by its affirmative acts, created or increased a danger faced by an individual; (2) the state's failure to protect that individual from danger was the proximate cause of her injury; and (3) the state's failure to protect shocks the conscience. *D.S.*, 799 F.3d at 798. The failure to find any one element precludes the claim. *Bryan v. Erie Cty. Office of Children & Youth*, 861 F.Supp.2d 553, 578 (W.D. Penn. 2012). Here, the Defendants argue Plaintiffs' allegations are insufficient on each element of the state-created danger exception.

First and foremost, state officials must have created the dangerous condition through their affirmative acts. *See Sandage v. Bd. of Commr's of Vanderburgh Cty.*, 548 F.3d 595, 600 (7th Cir. 2008) ("When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence."); *Windle v. City of Marion, Ind.*, 321 F.3d 658, 662 (7th Cir. 2003) (finding no

due process violation where police, who had knowledge of sexual relationship between student and teacher, failed to intervene and protect student, reasoning the police "did nothing to create a danger, nor did they do anything to make worse any danger [the student] already faced"). Moreover, the state officials must have actually known or suspected that danger would arise. *See, e.g., Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002) ("[I]n the context of child placement by an adoption agency, the agency officials and case workers are liable only if they violated 'the right of a child in state custody not to be handed over by state officers to a foster parent or other custodian . . . *whom the state knows or suspects to be a child abuser*.'" (emphasis in original.)); *Reed,* 986 F.2d at 1127 (where police arrested sober driver and "left behind a passenger, whom they knew to be drunk, with the car keys," the police knew their actions would create a dangerous situation for others on the road); *Bryan*, 861 F.Supp.2d at 577 (stating there must be allegations of "an awareness on the part of state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm") (internal quotation marks and citation omitted). This is because "[n]egligence or even gross negligence does not give rise to liability under § 1983." *Lewis*, 308 F.3d at 773; *see also K.H. v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) (state officials must have knowledge "because merely negligent or even grossly negligent misconduct by state officers is not actionable under section 1983").

Several cases help guide the court's analysis. In *Lewis v. Anderson*, the Seventh Circuit addressed a situation in which several officials of the Department of Health and Human Services placed children with foster parents who later abused the children. 308

F.3d at 771. The court held that the state-created danger exception could apply only if the state officers "actually knew of or suspected the existence of child abuse in the prospective adoptive family." *Id.* at 773. The court affirmed the district court's grant of summary judgment in favor of the state officers because there was no evidence that they "knew or suspected that abuse was occurring or likely." *Id.* at 775-76.

In *Bryan v. Erie Cty. Office of Children & Youth*, the defendants placed a minor foster child in the care of the plaintiffs, and the foster child sexually abused the plaintiffs' son in their home. 861 F.Supp.2d at 573. The evidence showed the defendants were aware of the foster child's long history of physically aggressive and sexually inappropriate behavior. *Id.* at 582. The district court denied defendants' motion for summary judgment on the state-created danger theory,[1] stating: "But for [the foster child's] placement, allegedly accompanied by the failure to fully apprise the [plaintiffs] of the full nature of [the foster child's] past misconduct and potential risk, a reasonable jury could conclude that [the plaintiffs' child] would not have been assaulted." *Id.* at 579-80.

Here, Plaintiffs allege the County Defendants placed R.D.S. into their home without informing them that R.D.S. was the victim of sexual abuse. The harm which

---

[1] The elements of the state-created danger theory are somewhat different than the Seventh Circuit's. To be clear, the Third Circuit found an issue of fact on all elements of the state-created danger theory—the foreseeability of the harm, the state actor's deliberate indifference, the foreseeability of the victim, and the state actor's affirmative acts. *Bryan*, 861 F.Supp.2d at 577. The element cited by the court is the fourth element—i.e., "whether the individual defendants affirmatively used their authority in a way that created a danger to [the foster child] or rendered him more vulnerable to danger." *Id.* at 581.

7

occurred, however, is R.D.S.'s alleged abuse of *other* children, namely, the Lamaster children. In an effort to cloak the County Defendants with knowledge of R.D.S.'s propensity to abuse other children, Plaintiffs allege the County Defendants knew from their training and experience that child victims of sexual abuse are more likely to abuse other children than non-victims. But the mere fact that R.D.S. may be at higher risk to abuse other children does not plausibly suggest that the County Defendants *knew* or *suspected* that R.D.S. would sexually abuse the Lamaster children. In the absence of any allegations from which a reasonable person could infer the County Defendants' knew or suspected R.D.S. harbored inappropriate sexual tendencies toward other children, Plaintiffs' substantive due process claims based on a state-created danger theory, asserted in Counts I and II, must be dismissed.

### B. Reimbursement of Foster Care Maintenance Payments

In Count III, Plaintiffs seek reimbursement for their foster care maintenance payments against the County Defendants under the Child Welfare Act ("CWA"), 42 U.S.C. § 670 *et seq.* The Defendants move to dismiss this claim because, they contend, the CWA does not create rights enforceable under § 1983, foreclosing any private right of action.

Section 1983 may supply a cause of action "against state actors even when the underlying statute lacks express authorization for private litigation." *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005). In *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002), the Supreme Court concluded that the existence of personal rights is essential to a claim under § 1983. *McCready*, 417 F.3d at 703 (citing *Gonzaga*, 536 U.S. at 285). Thus,

8

"only statutes conferring rights on identifiable persons may be enforced through § 1983." *Id.* "[I]f Congress wishes to create new rights enforceable under § 1983," the Supreme Court noted, "it must do so in clear and unambiguous terms." *Id.* at 290. Moreover, the right must be framed in mandatory, rather than precatory terms, and that it must not be so "'vague and amorphous that its enforcement would strain judicial competence.'" *C.H. v. Payne*, 683 F.Supp.2d 865, 877 (S.D. Ind. 2010) (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

Courts other than the Seventh Circuit have addressed whether the CWA creates rights enforceable by foster parents and foster children under § 1983, and the majority, including this court, have found that it does. *C.H. v. Payne*, 683 F.Supp.2d 865, 878 (S.D. Ind. 2010); *D.O. v. Glisson*, 847 F.3d 374, 381 (6th Cir. 2017), *cert. denied*, 138 S.Ct. 316 (2017); *Cal. St. Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 982 (9th Cir. 2010); *Chong v. McManaman*, 154 F.Supp.3d 1043, 1050 (D. Hawaii 2015); *Connor B. v. Patrick*, 771 F.Supp.2d 142, 172 (D. Mass. 2011); *Missouri Child Care Ass'n v. Martin*, 241 F.Supp.2d 1032, 1042 (W.D. Mo. 2003). *But see Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1203 (8th Cir. 2013) (no private right); *New York State Citizens' Coal. For Children v. Carrion*, 31 F.Supp.3d 512, 527 (E.D.N.Y. 2014) (no private right of action); *Carson v. Heineman*, 240 F.R.D. 456, 541 (D. Neb. 2007) (no private right). The court agrees with the reasoning of the majority.

Section 672 of the CWA, entitled "Foster care maintenance payments program," provides in relevant part that "[e]ach State with a plan approved under this part shall

9

make foster care maintenance payments" on behalf of children in foster care. 42 U.S.C. § 672(a)(1). "Foster care maintenance payments" are defined as

> payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the items described in the preceding sentence.

42 U.S.C. § 675(4)(A).

The court finds this language clearly and unambiguously confers a right to receive foster care maintenance payments to individuals who have foster children who otherwise meet the eligibility requirements. The statute explicitly requires any State with an approved plan to provide payments on behalf of foster children to cover the expenses listed in § 675(4)(A). The right to reimbursement under the CWA is mandatory (providing a State with an approved plan *shall* make foster care payments) and it clearly enumerates the items and services the payments are required to cover. The court therefore finds, at least for purposes of ruling on this motion to dismiss, that a cause of action to enforce this entitlement by foster parents is available under § 1983. Accordingly, Count III states a claim for relief.

### C. Declaratory Relief

Alternatively, in Count IV, Plaintiffs seek declaratory and injunctive relief against Stigdon in her official capacity, asking the court to find that the Plaintiffs are entitled to reimbursement under the CWA and directing that they be reimbursed. The Defendants

argue Stigdon must be dismissed because she is entitled to Eleventh Amendment immunity.

"The Eleventh Amendment grants states immunity from private suits in federal court without their consent." *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). State officials sued in their official capacities receive this same immunity. *Joseph v. Bd. of Regents*, 432 F.3d 746, 748 (7th Cir. 2005). One exception to Eleventh Amendment immunity is where state officials are sued in their official capacities for prospective injunctive relief. *Nuñez*, 817 F.3d at 1044; *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

Plaintiffs' claim does not fall within the *Ex Parte Young* exception because the placement of the Stacy children in their home terminated on May 13, 2017. Thus, their requested relief is neither prospective nor an ongoing violation of federal law. Accordingly, Plaintiffs' claim against her, asserted in Count IV, must be dismissed.

### D. State Law Claims

In Counts IV-VIII, Plaintiffs bring state claims against the IDCS for negligence, intentional infliction of emotional distress, and unjust enrichment. They seek compensatory damages and reimbursement of foster maintenance expenses. Like the claims asserted against Stigdon in her official capacity, the Defendants argue the IDCS is entitled to Eleventh Amendment immunity.

State agencies like the IDCS are arms of the state and, as such, are entitled to Eleventh Amendment immunity. *Nuñez*, 817 F.3d at 1044. Plaintiffs respond the IDCS is not immune because "the Eleventh Amendment does not apply to state law claims."

Plaintiffs are incorrect. In *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533 (2002), the Supreme Court found that 28 U.S.C. § 1367(a)—the supplemental jurisdiction statute—does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States, even though nothing in the statute expressly excludes such claims." *Id.* at 541-42. The State has not waived its Eleventh Amendment immunity. Accordingly, Plaintiffs' state law claims asserted in Counts V-VIII must be dismissed.

## III. Conclusion

For the reasons set forth herein, the court **GRANTS in part** and **DENIES in part** the Defendants' Motion to Dismiss (Filing No. 25). The court **GRANTS** the motion with respect to Counts I, II, IV-VIII, and **DENIES** the motion with respect to Count III.

**SO ORDERED** this 20th day of March 2019.

                                                RICHARD L. YOUNG, JUDGE
                                                United States District Court
                                                Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.